[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter involves a claim by the plaintiff Michael Robertson (Robertson) against his former employer Baybrook Remodelers, Inc. (Baybrook) essentially based upon a wrongful discharge. Robertson alleges in his complaint that Baybrook acting through its president Kenneth Carney fired him after Robertson sustained an on-the-job back injury on December 10, 1999 and that such firing was so related to his workers' compensation claim that it constitutes a violation of C.G.S. § 31-290a.
The court heard several days of evidence commencing on November 20, 2001 and concluding on April 29, 2002.
It appears that Robertson commenced his employment with Baybrook in March or April 1999 and was terminated for unsatisfactory job performance on December 16, 1999 by Carney. Robertson had sustained a back injury while unloading a truck on the premises of his employer on or about December 10, 1999, some six days prior to his firing according to the testimony adduced at the trial.
Robertson was hired by Baybrook as a project estimator. This position involved several functions including meeting potential customers of Baybrook which was a residential remodeling firm. If the customer proved to be interested in Baybrook's services, the estimator would prepare detailed plans, estimate the cost of the work and generally oversee the progress of the work to completion while acting as a liaison between the owner and the work crew of Baybrook. It was also the role as the estimator to assist the homeowner in the selection of the various components of the project such as counters and countertops, flooring and design of electrical systems. The evidence also disclosed that during the time that the plaintiff was working for Baybrook he had a sideline occupation as a real estate appraiser and in that job did data entry work and searched titles. He testified that he was working toward obtaining his real estate appraisers license which required class hours as well as a number of hours as an apprentice. He had put in 300 hours over the CT Page 12811 period of September 1999 to January 2000 which was apparently performed during his employment tenure at Baybrook.
According to Robertson, he thought his employment at Baybrook was simply "a job" and only "a source of money" and he had, during the course of his employment, told Carney that he had evening obligations to the exclusion of Baybrook's claim upon his time. Lloyd Adams who testified on behalf of Baybrook initially interviewed the plaintiff and thought that he would work out as an estimator. He knew nothing of the plaintiff's other job or any classroom involvement as Robertson did not volunteer the information. Carney testified that Robertson's performance was totally unsatisfactory and on November 29, 1999 he sat him down for an office conference concerning his continued employment. He was given 30 days to "shape up" but his work performance continued to deteriorate. He testified that Robertson's performance deteriorated over time and Robertson either directly stated or implied that he was not happy with the job. According to Adams he observed that Robertson had difficulty getting along with office personnel and he told Adams that he was not going to stay on the job. There was a pattern of not returning customer phone calls and according to Adams there were repeated complaints.
According to another coworker Rose Dewarga, the plaintiff told her he didn't like the job and "I have one foot out the door." She felt his language in and about the office was inappropriate and she and others complained to Carney.
The court concludes from all of this that the relationship between the plaintiff and Baybrook was not entirely harmonious prior to the occurrence which gave rise to his injury of December 10, 1999.
The plaintiff's injury was sustained at about noon on that day according to his testimony and he was the only employee around as the rest were attending a Christmas party. During the course of the afternoon his discomfort got worse and he went home. According to Carney, Robertson called in and said he would need two days off. At this time there was a job under way with a customer and it became essential that Robertson provide urgent information for the job to proceed. Robertson never responded to calls left at his house over the next couple of days, nor was he at home when Carney sent an employee to his house to get the information essential to the defendant. As a result of the lack of communication an addition to a house had to be torn down. On December 16, 1999 Carney went to Robertson's house and fired him.
It is the plaintiff's claim that Carney knew of his intention to file a workers' compensation claim because the day following the injury he CT Page 12812 called Carney and asked for the name of the compensation carrier. Carney, on the other hand, testified that in the several contacts he had with Robertson after December 10, 1999 there was no mention of a compensation claim and he didn't learn of any such intention until several days after he fired Robertson on December 16, 1999.
C.G.S. § 31-290A provides, inter alia:
(A) No employer who is subject to the provisions of this chapter shall discharge, or cause to be discharged, or in any manner discriminate against any employee because the employee has filed a claim for worker's compensation benefits. . . .
However, no employer is required to retain an employee with a pending compensation claim simply because of the injury. See Erisoty v. MerrowMachine Company, 34 Conn. App. 708.
The evidence before the court surrounding and preceding the defendant's firing of the plaintiff does not in the court's view meet the burden of proof required of the plaintiff to support the claim of discrimination allegedly sustained by the plaintiff. It is necessary for such a party to persuade the court by a preponderance of the evidence that a discriminatory reason more likely motivated the employer or indirectly by showing that the employers proffered explanation is unworthy of credence. See Diaz v. Housing Authority, 258 Conn. 724, 730.
This court cannot conclude that the workers' compensation claim played any part in the firing of the plaintiff. The record amply demonstrates a more than adequate basis to discharge the plaintiff independent of any claim raised by the plaintiff that the discharge was related to his filing of a claim for benefits.
Accordingly, as to the issues raised in the plaintiff's complaint as to a claim under wrongful discharge, the court finds for the defendant.
As to the remaining claims in the plaintiff's complaint, the plaintiff offered no evidence in support of the allegations nor did he brief them in any post-trial memorandum and the court considers them abandoned.
Turning to the defendant's counterclaim as amended, the defendant claims damages arising out of the plaintiff's failure to perform his duties properly; by failing to return personal property of the defendant upon request resulting in an inability on the part of the defendant to retrieve important and necessary information, that the plaintiff retained CT Page 12813 a "sheet rock lift" despite the defendant's demand for its return causing a loss to the defendant.
The court declined to receive evidence as to claims of damage incurred by the counterclaiming defendant as a result of plaintiff's inaptitude as to his performance considering it too speculative. While an employee may be liable directly to his or her employer for whatever injury or damage is occasioned by the employee's failure to exercise reasonable care and diligence or by reason of his misconduct; Sprague v. Boston and MaineCorp., 769 F2 26. See Annotation 27 AmJur 2d Sec. 220, p 723, the court in this instance concludes that the defendant's appropriate response to the plaintiff's performance would have been an earlier discharge which would have mitigated the damages the defendant now claims to have sustained.
As to the claim of the continued possession of the sheet rock lift borrowed by the plaintiff and not returned, the court awards the defendant the purchase price of $500. It is not clear whether the plaintiff told the defendant to come pick up the lift and the defendant declined to do so. No counsel fees are awarded for the claimed conversion.
Lastly, the defendant claims damages for the loss of records caused by the plaintiff from the computer memory in the possession of the plaintiff. The evidence offered supports the claim that the plaintiff declined to return the defendant's computer despite several requests by defendant's employees and when it was returned, the relevant information therein had been erased. Ken Carey testified that he had to recreate the information from his records which required 54 hours for the reconstruction and he opined that his time was worth $100 per hour which the court considers reasonable. Accordingly, the defendant is awarded $5,400.
Judgment may enter on the counterclaim in favor of the counterclaiming defendant Baybrook in the amount of $5,900.
George W. Ripley II Judge Trial Referee CT Page 12814